```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                   :
NATIONAL ELECTRICAL BENEFIT
FUND                               :

     v.                            :   Civil Action No. DKC 11-2621

                                   :
MIRARCHI BROTHERS, INC.
                                   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") is a motion for summary judgment filed by Plaintiff National Electrical Benefit Fund. (ECF No. 13).[1] The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I.   Background**

The following facts are undisputed. Plaintiff National Electrical Benefit Fund ("NEBF") is "a multiemployer employee pension benefit plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2), that was established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ["IBEW"] and the National Electrical

---

[1] The docket incorrectly lists two trustees as additional plaintiffs. It will be corrected to reflect that National Electrical Benefit Fund is the sole plaintiff.

Contractors Association." (ECF No. 13-4, Aff. of NEBF executive secretary-treasurer Lawrence J. Bradley, at ¶ 3). Defendant Mirarchi Brothers, Inc., is "an employer that has agreed to contribute to the NEBF by becoming signatory to collective bargaining agreements ["CBAs"] with IBEW Local Unions 98, 126, 269, 351, 380, and 743." (*Id*. at ¶ 4).

Pursuant to § 6.01 of the CBAs, Defendant agreed to "forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF." (ECF No. 13-6, CBA § 6.01). Defendant is also bound by a trust agreement with NEBF, which provides, in relevant part:

> In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered:
>
> 6.9.1 to impose on and receive from such Covered Employer all costs of any audit;
>
> 6.9.2 to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent[;] . . .
>
> 6.9.3 to assess and receive from such Covered Employer the lost interest from the delinquent amounts, to be calculated at a ten percent (10%) annual rate compounded monthly throughout the period of the delinquency; [and] . . .
>
> 6.9.5 to impose on and receive from such Covered Employer all costs, audit expenses,

> actuarial expenses, and attorneys['] fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise[.]

(ECF No. 13-7, Trust Agreement, at § 6.9 (emphasis removed)).

In 2010, Novak Francella LLC ("Novak"), "an auditing firm that specializes in auditing and conducting payroll compliance reviews for labor unions and employee benefit plans," conducted a "payroll compliance review of Defendant's payroll registers, payroll tax documents and cash disbursement records for the periods July 1, 2008, through December 31, 2009." (ECF No. 13-2, Aff. of Novak principal Jacquelyn Coyle, at ¶¶ 1, 5). At the conclusion of this review, "Novak determined that the total contributions underreported by Defendant [to NEBF] for the period . . . was $25,038.69." (*Id*. at ¶ 6; *see also* ECF No. 13-3, Novak Report).

On September 14, 2011, NEBF commenced this action by filing a complaint alleging violations of §§ 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and seeking unpaid contributions, liquidated damages, interest, attorneys' fees, and reimbursement for the costs of the audit and this litigation. (ECF No. 1). Defendant answered on February 6, 2012, generally denying all material allegations and raising a number of affirmative defenses, including that "Plaintiff['s] Complaint, in whole or in part, is barred by release, settlement

3

agreement, or other agreement pertaining to the claims asserted in this matter." (ECF No. 7, at Aff. Def. ¶ 11).

On May 1, 2012, Plaintiff filed the pending motion for summary judgment, submitting detailed affidavits and documentary evidence in support. (ECF No. 13). In opposing that motion, Defendant attaches the affidavit of its principal, Ralph Mirarchi, who asserts that a settlement agreement resolving prior litigation between the parties in the United States District Court for the Eastern District of Pennsylvania "encompasses and includes the funds which NEBF is currently seeking from Mirarchi in the instant case." (ECF No. 16-1, Mirarchi Aff., at ¶ 8). Plaintiff has filed papers in reply. (ECF No. 22).

## II. Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378(2007); *Emmett*, 532 F.3d at 297.

**III. Analysis**

On October 7, 2010, IBEW Local Union No. 98 and the trustees of various funds, including the NEBF, filed an ERISA action against Mirarchi Brothers, Inc., and Ralph Mirarchi in the United States District Court for the Eastern District of Pennsylvania.  (ECF No. 16-1, Ex. 1, civil cover sheet and complaint).  The complaint alleged that the defendants failed to remit timely contributions pursuant to a "collective bargaining agreement between Local 98 and the Philadelphia division of the Penn-Del-Jersey Chapter, National Electrical Contractor's

5

Association" (*id*. at ¶ 11), and sought to recover unpaid contributions, liquidated damages, and interest, plus attorneys' fees and costs. On October 12, 2011, the case was dismissed without prejudice based on the report of a magistrate judge that the parties had reached an agreement during a settlement conference. (ECF No. 16-1, Ex. 2, Oct. 12, 2011, order).[2]

In the instant case, the sole defense advanced by Defendant, as set forth in Mr. Mirarchi's affidavit, is that "[t]he settlement agreement reached in the prior action encompasses and includes the funds which NEBF is currently seeking from Mirarchi in the instant action." (ECF No. 16-1, Mirarchi Aff., at ¶ 8). Thus, according to Defendant, it "has resolved and settled all outstanding payment issues with NEBF and Mirarchi does not owe any money to NEBF." (*Id*. at ¶ 10). While Plaintiff concedes that "there may conceivably be some overlap" between the prior litigation and the instant case (ECF No. 22, at 4), it contends that, absent any specific evidence as to the content of the settlement agreement, Defendant has failed to show a genuine dispute of material fact sufficient to defeat summary judgment. Plaintiff also submits the supplemental affidavit of Mr. Bradley, its executive secretary-treasurer, which recites that the prior litigation did not resolve issues

---

[2] The October 12, 2011, order was the last order issued in the case.

"with respect to the amount determined by NEBF's auditor to [be] due for the periods July 7, 2008, through December 31, 2009," *i.e.*, the subject of the instant case. (ECF No. 23, Bradley Supp. Aff., at ¶ 2). Mr. Bradley attaches to his affidavit "[a] printout setting forth the payments actually received by NEBF from October 1, 2010, to [the] present" (*id*. at ¶ 3), demonstrating that no payments aside from monthly contributions have been made to NEBF since the time the prior litigation was commenced.

While neither party has provided any substantive legal analysis, Defendant's argument can be construed as presenting a defense based on *res judicata* and/or collateral estoppel, as well as an assertion that the contributions have been paid in part.

Under the doctrine of *res judicata*, a party may not seek to litigate, in a new action, claims that were or could have been raised in an earlier action between the parties or their privies that was resolved on the merits:

> Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). . . . "To establish a res judicata defense, a party must establish: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of

7

>> parties or their privies in the two suits."
>> *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir.
>> 1997) (internal quotation marks omitted),
>> *cert. denied*, 523 U.S. 1072, 118 S.Ct. 1512,
>> 140 L.Ed.2d 666 (1998).
>
> *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).

Collateral estoppel, by contrast, prevents "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Ramsay v. U.S. Immigration & Naturalization Serv.*, 14 F.3d 206, 210 (4th Cir. 1994) (quoting *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987)). When a party asserts the doctrine, it must show that: (1) the issue precluded is identical to one previously litigated, (2) the issue was actually determined in the prior proceeding, (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding, (4) the prior judgment was final and valid, and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. *See Ramsay*, 14 F.3d at 210.

Here, Defendant cannot make the required showing under either doctrine because there was no final judgment on the merits of the prior litigation. *See Brandenfels v. Heckler*, 716 F.2d 553, 557 (9th Cir. 1983) ("dismissals without prejudice do

8

not constitute a final determination to which collateral estoppel is applied"); *Johnson v. O'Brien*, No. 7:09cv00165, 2011 WL 11275, at *4 (W.D.Va. Jan. 3, 2011) ("the Court's previous dismissal without prejudice does not constitute a final judgment on the merits for the purpose of res judicata"). Moreover, Mr. Mirarchi's mere assertion in an affidavit that the settlement agreement in the prior action encompasses the amounts sought in this case is insufficient to show the requisite identity, particularly when compared with Mr. Bradley's supplemental affidavit, which demonstrates that no payments have been made by Defendant to NEBF other than regular monthly contributions. Accordingly, Defendant has failed to show the settlement agreement resolving the prior litigation has preclusive effect in this case.

Moreover, the court is essentially presented with an unopposed motion for summary judgment. Plaintiff has submitted evidence establishing that, pursuant to the CBAs, Defendant was obligated to make monthly payments of "an amount equal to 3% of the gross labor payroll for the preceding calendar month paid to, or accrued by, the Covered Employees." (ECF No. 13-6, CBA § 6.01). The 2010 audit conducted by Novak determined that Defendant failed to pay NEBF $25,038.69 in contributions for the period of July 7, 2008, through December 31, 2009. (ECF No. 13-3). Pursuant to § 6.9 of the NEBF Trust Agreement, and

9

consistent with § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), Plaintiff has a right to recover all delinquent contributions, liquidated damages of twenty percent of the delinquent amount, interest accruing at the rate of ten percent per annum, the cost of the any audit fee, and attorneys' fees and costs associated with any litigation. (ECF No. 13-7, at § 6.9). Thus, Plaintiff has established Defendant's violation of Section 515 of ERISA, 29 U.S.C. § 1145 ("[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement"), and is entitled to enforce the CBAs and trust agreement pursuant to Section 502, 29 U.S.C. § 1132(a)(3) (authorizing an action "by a participant, beneficiary, or fiduciary"). Defendant has not provided any evidence that amounts were paid to satisfy these obligations.

Plaintiff seeks judgment in the total amount of $40,512.15, consisting of $25,038.69 in unpaid contributions (*i.e.*, the amount the audit determined was delinquent), $5,007.75 in liquidated damages (*i.e.*, 20% of $25,038.69), $9,583.20 in interest, and $882.51 for the audit fee (*see* ECF Nos. 13-2 ¶ 5; 13-4 ¶ 16). Plaintiff has shown that it is entitled to this amount, as well as to an award of reasonable attorneys' fees and

costs, which it may request by a properly supported fee petition submitted within fourteen days.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

11