IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRICAL BENEFIT
FUND
:
   v. : Civil Action No. DKC 11-2621
:
MIRARCHI BROTHERS, INC.
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") is a motion for reconsideration filed by Defendant Mirarchi Brothers, Inc. (ECF No. 26), and a motion for attorneys' fees and costs filed by Plaintiff National Electrical Benefit Fund (ECF No. 27). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion for reconsideration will be denied and the motion for attorneys' fees will be granted in part and denied in part.

**I. Background**

In 2010, pursuant to collective bargaining agreements, Plaintiff retained an auditing firm to conduct a payroll compliance review of Defendant's payroll registers, tax documents, and cash disbursement records for the period from July 1, 2008, through December 31, 2009. The audit found that

Defendant underreported contributions owed to Plaintiff in the amount of $25,038.69. On September 14, 2011, Plaintiff commenced this action, seeking unpaid contributions, liquidated damages, interest, attorneys' fees, and costs. Defendant answered on February 6, 2012, denying all material allegations and raising a number of affirmative defenses, including that "Plaintiff['s] Complaint, in whole or in part, is barred by release, settlement agreement, or other agreement, pertaining to the claims asserted in this matter." (ECF No. 7, at 7).

On May 1, 2012, Plaintiff moved for summary judgment, submitting detailed affidavits and documentary evidence in support. In opposing that motion, Defendant submitted the affidavit of its principal, Ralph Mirarchi, which recited that a settlement agreement resolving prior litigation between the parties in the United States District Court for the Eastern District of Pennsylvania "encompasse[d] and include[d] the funds which [Plaintiff] is currently seeking from [Defendant] in the instant case." (ECF No. 16-1, Mirarchi Aff., at ¶ 8). Mr. Mirarchi further averred, in conclusory fashion, that Defendant "has resolved and settled all outstanding payment issues with [Plaintiff]," that it "does not owe any money to [Plaintiff]," and that Plaintiff's claims to the contrary "are incorrect and genuine issues of material fact exist in this matter." (*Id*. at ¶¶ 10, 11). In reply, Plaintiff submitted the supplemental

2

affidavit of its executive secretary-treasurer, Lawrence J. Bradley, indicating that the prior litigation cited by Mr. Mirarchi did not resolve issues "with respect to the amount determined by [Plaintiff's] auditor to [be] due for the periods July 7, 2008, through December 31, 2009," *i.e.*, the subject of the instant case. (ECF No. 23, Bradley Supp. Aff., at ¶ 2). Attached to Mr. Bradley's supplemental affidavit was a printout setting forth all payments received by Plaintiff from October 1, 2010, to the date of filing, demonstrating that no payments aside from monthly contributions had been made since the time the prior litigation commenced.

By a memorandum opinion and order issued November 28, 2012, the court granted Plaintiff's motion for summary judgment. The court construed Defendant's argument as "presenting a defense based on *res judicata* and/or collateral estoppel, as well as an assertion that the contributions have been paid in part." (ECF No. 24, at 7). It found that a *res judicata* defense could not succeed because the prior litigation ended in settlement; thus, "there was no final judgment on the merits[.]" (*Id*. at 8). "Moreover," the court explained, "Mr. Mirarchi's mere assertion in an affidavit that the settlement agreement in the prior action encompasses the amounts sought in this case is insufficient to show the requisite identity [between the two suits], particularly when compared with Mr. Bradley's

supplemental affidavit, which demonstrates that no payments have been made by Defendant to [Plaintiff] other than regular monthly contributions." (*Id*.). While Plaintiff's evidence showed entitlement to $25,038.69 in unpaid contributions, plus liquidated damages of twenty percent of the delinquent amount, interest at the rate of ten percent per annum, attorneys' fees, and audit and litigation expenses, "Defendant [did] not provide[] any evidence that amounts were paid to satisfy these obligations." (*Id*. at 10). Thus, judgment was entered in favor of Plaintiff in the total amount of $40,512.15, and Plaintiff was directed to file "a properly supported fee petition . . . within fourteen days." (*Id*. at 11).

On December 3, 2012, Defendant filed the pending motion for reconsideration (ECF No. 26), which Plaintiff opposed (ECF No. 28). Plaintiff filed its motion for attorneys' fees and costs on December 10 (ECF No. 27), and Defendant filed papers in opposition (ECF No. 29).

**II. Motion for Reconsideration**

A motion for reconsideration filed within twenty-eight days of the underlying order is governed by Federal Rule of Civil Procedure 59(e). Courts have recognized three limited grounds for granting such a motion: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not previously available, or (3) to correct clear error of law or

prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Federal Practice and Procedure § 2810.1, at 127-28 (2d ed. 1995)).

Defendant contends that "reconsideration . . . is necessary to correct a clear error [of] law and fact, and to prevent manifest injustice." (ECF No. 26, at 5). It argues that the court erroneously credited Plaintiff's evidence while failing to "accept as true the evidence presented by Defendant, namely the affidavit of Ralph Mirarchi." (ECF No. 6). According to Defendant, it "[did] not oppose Plaintiff['s] Motion for Summary Judgment on the legal basis of collateral estoppel or res judicata, but on the simple basis that Defendant[] [does] not owe Plaintiff[] any money as alleged, therefore a very genuine issue of material fact exists." (*Id.* at 5-6).

By Defendant's way of thinking, when confronted with a motion supported by detailed affidavits and documentary evidence, the non-moving party need only submit an affidavit generally denying liability in order to avoid summary judgment.

5

This ignores the oft-repeated language of the court's standard of review on summary judgment. As explained in the prior opinion in this case:

> "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." [*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)] (citations omitted).

(ECF No. 24, at 5). Indeed, Defendant itself recognized, in opposing Plaintiff's motion, that "[t]he non-moving party . . . must go beyond the mere allegations of the pleadings, and, from the evidence of record, designate specific facts showing that there is a genuine disputed issue for trial." (ECF No. 17, at 4). Thus, it should have come as no surprise that the general assertions in Mr. Mirarchi's affidavit – *i.e.*, that "[t]he plaintiffs in the prior action sought the same funds which [Plaintiff] is currently seeking from [Defendant] in the instant action"; that "[t]he settlement agreement reached in the prior action encompasses and includes the funds which [Plaintiff] is currently seeking"; and that "[Defendant] has resolved and

6

settled all outstanding payment issues with [Plaintiff] and [Defendant] does not owe any money to [Plaintiff]" (ECF No. 26, at 3) – were insufficient to defeat summary judgment. Defendant has not demonstrated that the prior ruling was clearly erroneous or manifestly unjust. Accordingly, its motion for reconsideration will be denied.

**III. Motion for Attorneys' Fees and Costs**

As noted, the court previously determined that Plaintiff was entitled to an award of attorneys' fees and costs incurred in obtaining the underlying judgment, which are generally available in ERISA actions. *See* 29 U.S.C. § 1132(g)(2). In determining what amount constitutes a reasonable attorneys' fee, the court employs a hybrid method, which begins with calculation of the lodestar amount — *i.e.*, the product of the reasonable hours expended on the litigation multiplied by a reasonable hourly rate — followed by adjustment, as appropriate, based on the factors enunciated in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). As this court has explained:

> Absent circumstances warranting adjustment, the lodestar figure represents the proper total fee award. *Wileman v. Frank*, 780 F.Supp. 1063, 1064 (D.Md. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). In deciding what constitutes a "reasonable" number of hours and rate, the district court generally is guided by the following factors:

7

> "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."
>
> *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978))).

*CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 787 (D.Md. 2000); *see also Ass'n of Machinists & Aerospace Workers v. Werner–Matsuda*, 390 F.Supp.2d 479, 490 (D.Md. 2005).

Plaintiff's fee petition is supported by the declaration of its counsel, Jennifer Hawkins. (ECF No. 27-2). The declaration reflects that Ms. Hawkins has been licensed to practice law for eighteen years, and incorporates billing records, broken down by task, showing that she worked 1.3 hours at the rate of $328.00 per hour (totaling $426.40), .9 hours at the rate of $338.00 per

hour (totaling $304.20), and 20.5 hours at the rate of $348.00 per hour (totaling $7,134.00).  She was assisted on the case by a paralegal, who worked 1.2 hours at the rate of $115.00 per hour (totaling $138.00).  Thus, Plaintiff has submitted evidence in support of a total fee award of $8,002.60.[1]  The hourly rate for Ms. Hawkins and her paralegal fall within the presumptively reasonable range in this district for professionals with comparable experience, as set forth in Appendix B of the court's Local Rules.  Moreover, the billing records reflect no duplication of work and a reasonable number of hours, considering that the case was ultimately resolved on summary judgment.  The requested amount is accepted as the lodestar and no circumstances warranting adjustment are presented.

Defendant's argument in opposition to the motion for attorneys' fees is not persuasive.  Apparently referring to Plaintiff's assertion that it was not seeking reimbursement for all the hours worked in the case, Defendant faults Plaintiff for "not identif[ying] the amount of what has not been requested, therefore whether the fees charged are reasonable in light of the total amount of time spent cannot be determined."  (ECF No.

---

[1] Plaintiff actually seeks a total award of $8,524.40, but its calculation contains an apparent error in totaling the hours spent in motions practice.  (ECF No. 27-2, at 4).

29, at 3). It points to no authority in support of this argument, however, nor is the court aware of any.

Defendant further contends that Plaintiff was required to "provide[] an expert opinion supporting [Ms. Hawkins'] declaration." (*Id.*). Presumably, this argument refers to the requirement that, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award," *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990), such as "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community," *Robinson v. Equifax Information Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009). Plaintiff's reference to the Laffey Matrix is "insufficient to carry [its] burden" in this regard because "the Laffey Matrix is not binding upon the United States District Court for the [District of Maryland], and . . . Plaintiff has provided no evidence that the Laffey Matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of attorneys in [southern Maryland], a suburb of Washington, D.C." *Robinson*, 560 F.3d at 245 (internal marks and citation omitted). The Fourth Circuit has recognized, however, in cases where an award of attorneys'

fees is authorized by statute, that "a district court has close and intimate knowledge of the efforts expended and the value of the services rendered." *In re Botero-Paramo*, 483 Fed.Appx. 779, 788 (4th Cir. 2012) (quoting *Plyler*, 902 F.2d at 243). In *In re Botero-Paramo*, 483 Fed.Appx. at 789, the court determined that "because nearly every case on a bankruptcy court's docket involves reviewing attorneys' fees and costs in the community, . . . bankruptcy courts are, in certain circumstances, particularly qualified to determine the reasonableness of fees based on their own expertise." In so holding, the court cited with approval *CoStar Group, Inc.*, 106 F.Supp.2d at 788, for the proposition that, "in the absence of sufficient documentation, the [district] court may rely on its own knowledge of the market." *Id*. Thus, while the Fourth Circuit has not made explicit that the reasoning of *In re Botero-Paramo* may apply "in certain circumstances" outside the bankruptcy context, it is fairly inferable that it may, particularly where the court has "had several similar cases before it in which it ha[s] awarded attorneys' fees" and the fees sought by the prevailing party are "within the range of fees awarded in those similar cases." *Id*.

Here, the court has previously considered fee petitions in a number of similar cases, and found reasonable the same hourly rate cited by Ms. Hawkins here. *See, e.g., National Elec. Ben. Fund v. AC-DC Elec., Inc.*, Civ. No. DKC 11-0893, 2013 WL 388986,

11

at *3 (D.Md. Jan. 30, 2013) (finding an hourly rate of $338.00 reasonable). Considering also that the hourly rate is presumptively reasonable under the court's guidelines for attorneys with comparable experience – and that Defendant does not argue that Plaintiff's fee request is unreasonable, only that Plaintiff did not meet its burden in showing reasonableness, *see In re Botero-Paramo*, 483 Fed.Appx. at 789 – there is a sufficient basis for finding Ms. Hawkins' hourly rates reasonable in this case. Accordingly, a fee award in the amount of $8,002.60 is appropriate.

Plaintiff further seeks taxation of the following litigation costs: filing fee ($350.00), service of process ($150.00), and computerized legal research ($90.10). The docket reflects payment of the filing fee; thus, Plaintiff is entitled to reimbursement for that amount. Plaintiff has not, however, provided documentary support for its claim to fees associated with a process server, *see AC-DC Elec., Inc.*, 2013 WL 388986, at *3 (denying Ms. Hawkins' request for taxation of process server fees for the same reason), and fees for computerized legal research are not taxable in this district, *see* Guidelines for Bills of Costs § III(2) (2d Ed. Aug. 2011). Thus, Plaintiff is entitled only to reimbursement of the filing fee.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for reconsideration will be denied and Plaintiff's motion for attorneys' fees and costs will be granted in part and denied in part. A separate order will follow.

                                            _____/s/_____
                                            DEBORAH K. CHASANOW
                                            United States District Judge